IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CEDRICK HILL | CRIMINAL ACTION FILE NO.<br><br>1:18-CR-277-AT-JKL |

## ORDER AND FINAL REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Cedrick Hill's Motion to Sever Counts [Doc. 77]. For the reasons that follow, it is **RECOMMENDED** that the motion be **DENIED**.[1]

## I.   BACKGROUND

On October 12, 2017, a grand jury returned a multi-defendant indictment charging Mr. Hill with one count of participating in a drug conspiracy and one count of possession with intent to distribute methamphetamine. *See United States v. Gordon Evans, et al.*, 1:16-cr-427 (N.D. Ga.) ("*Evans*"), Dkt. No. 33. The

---

[1] Also pending before the Court is Mr. Hill's motion to withdraw a motion to compel discovery. [Doc 95; *see also* Doc. 78 (motion to compel).] In the motion to withdraw, Mr. Hill represents that the parties were able to resolve issues raised in the motion to compel. Accordingly, the motion to withdraw is **GRANTED** and the motion to compel [Doc. 78] is **DEEMED WITHDRAWN**.

following day, the FBI conducted a coordinated operation to arrest those defendants charged in the indictment who were not already in custody. According to the government, Mr. Hill became aware of the efforts to arrest him and fled from the Atlanta area to St. Louis, Denver, and Houston using rental cars. [Doc. 84 at 2-3.]

Several months later, in early January 2018, the FBI located Mr. Hill at a metro Atlanta hotel.[2] At around 3:00 a.m. on January 5, 2018, FBI Special Agent Paul Szabo encountered Mr. Hill in the hotel lobby. [Doc. 32 at 5.] After a brief scuffle, Mr. Hill ran outside to the hotel parking lot, where he jumped into a white truck. SA Szabo chased after Mr. Hill, and as Mr. Hill drove away, SA Szabo grabbed onto the driver's side door of the truck. With SA Szabo stuck in the door, Mr. Hill allegedly hit another vehicle with the driver's side of the truck, crushing SA Szabo. Despite sustaining severe injuries, SA Szabo managed to shoot and strike Mr. Hill multiple times. [*Id.*] Mr. Hill then drove out of the hotel parking lot with SA Szabo still dangling from the side of the truck, and travelled

---

[2] On June 21, 2019, the Court held an evidentiary hearing at which the Court heard testimony concerning the circumstances of Mr. Hill's arrest. [*See* Doc. 32 (hearing transcript).] Details of the arrest may be found in the undersigned's report and recommendation on Mr. Hill's motion to suppress [*see* Doc. 46], which was later withdrawn based upon the parties' joint stipulation over the use of Mr. Hill's statements following his arrest [*see* Doc. 63].

approximately a quarter of a mile before coming to a stop. [*Id*. at 5-6.] Mr. Hill exited the truck, and both he and SA Szabo fell to the ground. [*Id*. at 6.] SA Szabo called 911 for help, and as he remained on the ground, Mr. Hill returned to the truck and drove back to the hotel, leaving SA Szabo on the side of the road. Mr. Hill entered the hotel lobby and collapsed. [*Id*.] He was then arrested and transported to a hospital due to his injuries.

On July 17, 2018, a grand jury returned a separate indictment—the initial indictment in this case—charging Mr. Hill with a single count of assaulting a federal law enforcement officer in violation of 18 U.S.C. § 111. [Doc. 1.] In December 2019, this case was certified ready for trial. [Doc. 46.]

In February 2020, the government superseded the indictment in *Evans*. *Evans*, Dkt. No. 1158. The two drug charges against Mr. Hill remained essentially unchanged, but it added a notification to Mr. Hill that he was subject to an increased mandatory minimum sentence based upon a prior conviction. *See id.* at 49-51, 55-56. Then, on June 9, 2020, the government obtained a three-count superseding indictment in this case, combining the drug and assault charges. [Doc. 59.] In the superseding (and now operative) indictment, Mr. Hill is charged in Counts One and Two with what are, in essence, the same drug conspiracy and a substantive drug

3

offenses previously charged in *Evans*[3] (there is some difference in the dates of the drug conspiracy, but that is immaterial for present purposes), and in Count Three, he is charged with assault of a federal law enforcement officer in connection with his January 5, 2018 arrest. [*Id.*]

On September 10, 2020, Mr. Hill moved to sever the two drug charges from the assault charge. [Doc. 77.] The presiding District Judge decertified the case, and referred the motion to the undersigned for consideration. [Doc. 80.] On October 13, 2020, the government filed a response in opposition to the motion. [Doc. 84.] Mr. Hill has not filed a response, and the time for doing so has expired. The motion is now ripe for resolution.

## II.   DISCUSSION

### A.   The Parties' Arguments

Mr. Hill first argues that the assault charge is improperly joined under Federal Rule of Criminal Procedure 8(a). Rule 8(a) authorizes joinder of counts when the charges are (1) of the same or similar character, (2) based on the same act or transaction, or (3) connected with or constitute parts of a common scheme or

---

[3] According to the government, if the charges in this case are not severed, it intends to dismiss the *Evans* indictment as to Mr. Hill, and has apprised Mr. Hill's counsel of this plan. [*See* Doc. 84 at 5 n.2.]

plan. [Doc. 77 at 3-4.] Mr. Hill asserts none of these circumstances is present here. Most significantly, he argues that the drug and assault are not connected with or constitute parts of a common scheme or plan because "[t]he evidence at trial concerning the drug offenses will include evidence concerning Mr. Hill's participation in methamphetamine sales and his interactions with alleged co-conspirators," which is not relevant to Mr. Hill's intent and actions on the night of his arrest months later. [*Id.* at 4.][4]

Mr. Hill goes on to argue in the alternative that even if joinder were proper, the assault charge should be severed because he would be prejudiced if the charges were tried together. [Doc. 77 at 4-10.] In particular, he states that at trial he may testify as to his state or mind and personal knowledge at the time of the assault, explaining that "should [he] decide to take the stand, he is prepared to testify as to his recollection of who he believed [the agent] to be, whether he feared for his safety, when during the events he was shot . . . , and his intentions at different points

---

[4] Mr. Hill also contends that the assault charge is "clearly" not of the same or similar character as the drug charges, and that the drug and assault charges are not based on the same act or transaction, because the events giving rise to the drug charges and the alleged assault took place months apart at different locations and involved entirely different sets of witnesses. [Doc. 77 at 3-4.] The government does not dispute these arguments in its response, and focuses on joinder as part of a common scheme or plan. [*See* Doc. 84 at 6-9.]

5

during the incident." [*Id.* at 7.] Meanwhile, Mr. Hill asserts that he has a "strong interest in refraining from testifying as to the drug counts." [*Id.*] He explains that the government will likely introduce recorded conversations between him and other co-conspirators to support the drug charges, as well as testimony from government witnesses and of codefendants; and that that his testimony could not plausibly contextualize the recorded conversations recall and describe events from years ago when the events leading to the drug charges occurred, given his faded recollection. [*Id.* at 8.] In addition, testifying to the drug charges would subject him to government impeachment by prior felony conviction, including a prior drug offense, which the jury may (impermissibly) use to convict him of the current drug charges. Mr. Hill acknowledges that he would be subject to the same impeachment at a separate trial on the assault charge, but asserts that because he has no prior convictions for violent offenses, the jury might give it less weight. Mr. Hill finally notes that he also wants to avoid the risk of prejudicial cross examination by the government on uncharged conduct as it relates to the drug charges. [*Id.*] Based upon the foregoing concerns, Mr. Hill maintains that trying the drug and assault charges together would prejudice his right to choose whether to take the stand or

remain silent, possibly preventing the jury from hearing evidence about his knowledge and intent relevant to the assault charge. [*Id.* at 7-10.]

The government counters that the drug and assault charges are parts of a common scheme or plan. [Doc. 84 at 5.] The government explains that Mr. Hill committed the assault offense when SA Szabo was attempting to execute the arrest warrant for the drug activity charged in *Evans* (and now charged in Counts One and Two in the instant case), and that Mr. Hill, who had been evading arrest for months and appreciated the seriousness of the pending charges, "attempted to flee at all costs." [*Id.* at 5-6.] The government stresses that a direct relationship exists between the drug and assault charges because the conduct underlying the assault charge in fact amounts to an attempt to escape criminal liability for the drug charges. [*Id.* at 8-9.]

As for prejudice, the government argues that Mr. Hill has not alleged any specific and compelling prejudice that warrants severance. It emphasizes that even in separate trials, evidence from one would remain admissible in the other; thus, Plaintiff's identified prejudice—being unable to decide whether or not to testify—is essentially illusory. [Doc. 84 at 11-12.] Evidence to prove the drug charges would be admissible to prove assault under Federal Rule of Evidence 404(b), since

7

the alleged drug activity provides a motive for assaulting SA Szabo, and evidence of flight would be admissible to prove consciousness of guilt on the drug charges. [*Id.*]

### B. Joinder is Proper Under Rule 8(a)

"Rule 8(a) permits an indictment to charge a defendant with multiple offenses when they 'are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.'" *United States v. Annamalai*, 939 F.3d 1216 (11th Cir. 2019) (quoting Fed. R. Crim. P. 8(a)). The Eleventh Circuit construes this rule "broadly in favor of initial joinder." *Id.* (citation omitted).

The Court agrees with the government that joinder is proper under Rule 8(a) because the drug charges and the assault charge are connected in a common scheme or plan. In particular, Mr. Hill was allegedly involved in a drug conspiracy; following the unsealing of the indictment in *Evans* and the ensuing arrest of his co-defendants, he fled in an attempt to evade prosecution; and once law enforcement encountered him, he again attempted escape to avoid apprehension, injuring SA Szabo in the process. The alleged assault therefore is part and parcel of Mr. Hill's bid to avoid prosecution for the drug conspiracy.

8

In reaching this conclusion, the Court finds instructive the Eleventh Circuit's decision in *United States v. Gabay*, 923 F.2d 1536, 1540 (11th Cir. 1991). In that case, the court found that criminal charges based on a defendant's participation in a counterfeiting scheme were "connected together" with a charge that the defendant had violated his bond by fleeing, because "his motive for flight was directly related to his impending prosecution for counterfeiting." *Id.* Applying *Gabay*, another judge in this District found that joinder of a substantive criminal offense with a later bail-jumping offense proper under Rule 8. *United States v. Dooley,* No. 2:09-CR-00016-WCO, 2011 WL 2162687 (N.D. Ga. June 2, 2011). In *Dooley*, the defendant was indicted for possessing an unregistered destructive device. *Id.* at *7. The defendant failed to appear for his trial, and the government filed a superseding indictment charging the defendant with an additional offense of failing to appear as required for trial under 18 U.S.C. § 3146(a)(1). *Id.* at *1. The defendant moved to sever the counts, arguing that they were improperly joined under Rule 8. The court disagreed, reasoning that bond-jumping and the underlying offense were connected in time because the defendant's failure to appear occurred on the date of his trial, and in scheme because his "motive for flight was obviously to avoid prosecution for the first offense." *Id.* at *7. The court also explained that the

9

charges were linked because the bond that the defendant had violated had been granted for the first offense. *Id.*

The facts underlying these bail-jumping cases are analogous to the flight resulting in Mr. Hill's assault charge. Here, the assault charge is connected with the underlying drug offenses because Mr. Hill's desire to avoid apprehension for the drug offenses provides a motive for his ill-fated attempt to avoid arrest. The offenses are also connected because the arrest warrant that SA Szabo was attempting to execute had been issued based on the pending drug charges. As a result, the drug charges and the assault charge "may . . . logically be construed as one transaction." *United States v. Chubbuck*, No. CR 99-1027-BB, 2000 WL 36739608, at *2 (D.N.M. Oct. 5, 2000) (finding that bank robbery and assault charges arising from defendant's alleged assault on officers who attempted to arrest him on the bank robbery charges were properly joined). Accordingly, the undersigned finds that joinder is appropriate under Rule 8(a).

### C. Defendant Has Not Shown Prejudice Sufficient to Warrant Separate Trials

Having found that joinder is proper, the Court must next determine whether the potential prejudice to Mr. Hill of trying the charges together warrants severance under Federal Rule of Criminal Procedure 14. Rule 14(a) authorizes the Court to

10

order separate trials of counts if joinder of the offenses "appears to prejudice a defendant." "The decision whether to grant a severance lies within the district court's sound and substantial discretion." *Annamalai*, 939 F.3d at 1223 (citation omitted). "In deciding the motion to sever under [Rule] 14, the trial judge [is] required to balance the prejudice to the defendant against the interests of judicial economy." *United States v. Benz*, 740 F.2d 903, 911 (11th Cir. 1984). Importantly for the present motion, the defendant must show "compelling prejudice" to justify severance—*i.e.*, "that the average juror could not following the 'court's limiting instruction and appraise the independent evidence against a defendant solely on that defendant's own acts, statements, and conduct in relation to the allegations contained in the indictment and render a fair and impartial verdict.'" *Annamalai*, 939 F.3d at 1223-24 (quoting *United States v. Walser*, 3 F.3d 380, 386-87 (11th Cir. 1993)).

"[S]everance is not mandatory simply because a defendant indicates that he wishes to testify on some counts but not on others." *United States v. Hersh*, 297 F.3d 1233, 1243 n.15 (11th Cir. 2002) (quoting *United States v. Forrest*, 623 F.2d

1107, 1115 (5th Cir. 1980)).[5]  "When a defendant claims that he is unable to testify about one offense because he is being simultaneously tried for a separate offense, a court should consider severance in light of three factors: (1) whether the first offense is clearly distinct in time, place, and evidence from the second offense; (2) whether the defendant established the importance of his proffered testimony regarding the offense about which he is unable to testify; and (3) whether the defendant has a strong need not to testify about that offense." *Dooley,* 2011 WL 2162687, at *8 (citing *United States v. Corbin*, 734 F.2d 643, 648-49 (11th Cir. 1984)); *see also Hersh*, 297 F.3d 1233, 1243 n.15.  To make this showing, the defendant must "present enough information regarding the nature of the testimony he wishes to give on one count and his reason for not wishing to testify on the other to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying."  *Alvarez v. Wainwright*, 607 F.2d at 686 (5th Cir. 1979) (quoting *Baker v. United States*, 401 F.2d 958, 977 (D.C. Cir. 1968)); *see also Forrest*, 623

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981.

F.2d at 1115 (stating that defendant must provide a "factual basis on which to evaluate possible prejudice").

"One important consideration in this analysis is whether severing the counts would achieve the exclusion that the defendant desires." *United States v. Berkman*, 433 F. App'x 859, 862 (11th Cir. 2011) (citing *Benz*, 740 F.2d at 912). "Notably, when a defendant testifies on [his] own behalf, []he waives the Fifth Amendment privilege to refuse to answer questions properly within the scope of cross-examination, which includes all matters 'reasonably related' to [his] testimony on direct examination." *Id.* (*citing United States v. Pilcher*, 672 F.2d 875, 878 (11th Cir. 1982)). As a result, "[u]nfair prejudice does not result when two offenses are joined if evidence admissible to prove each offense is also admissible to prove the other offense." *Gabay*, 923 F.2d at 1540.

The government maintains that prejudice under the circumstances of this case would not be solved by severing the counts because evidence supporting the drug charges and the assault charge are mutually admissible. As a result, even if the charges were tried separately, Mr. Hill would face the same dilemma in deciding whether to take the stand. The Court agrees.

The former Fifth Circuit's opinion in *United States v. Williamson*, 482 F.2d 508 (5th Cir. 1973), is on point. In *Williamson*, federal agents attempted to arrest the defendant, Williamson, in his car in a motel parking lot after they surveilled him delivering amphetamine pills to an associate, Glover, in a motel room for an anticipated drug deal. To avoid apprehension, Williamson attempted to drive off, and in the process, hit an agent and almost hit a car containing two other agents. Another officer thwarted Williamson's escape, and Williamson was taken into custody. *Id.* Williamson was charged in a single indictment with distribution of amphetamine capsules and assault on a federal law enforcement officer. *Williamson*, 482 F.2d at 511. He moved to sever the counts, which the district court denied. *Id.* On appeal, he argued that trying the charges together was unduly prejudicial. The Fifth Circuit disagreed, reasoning that even if the cases had been tried separately, evidence of the drug charge and the assault charge would have been admissible in each case. The court explained:

> [I]n the present case separate trials would not have resulted in segregation of the evidence as to each offense. In a trial solely on the drug charge, the attempted exit from the parking lot and the resulting assault on the agent would have been admissible as evidence of flight. On the other hand, in a trial on the assault charge, the evidence of the drug transaction would have been admissible to prove motive and to prove that the officers were engaged in the performance of their official duties. Therefore, insofar as

14

segregation of evidence is concerned, the failure to sever resulted in no prejudice to [Williamson].

*Id.* at 511.

Williamson also argued that "joinder made it impossible for him to testify in his own behalf on the assault charge without being subject to cross-examination about his participation in the drug transaction." *Williamson*, 482 F.2d at 512. The court again disagreed, explaining:

> In a leading case, *Cross v. United States*, . . . 335 F.2d 987 (D.C. Cir. 1964), the District of Columbia Circuit held that severance under Rule 14 was required where the accused wished to testify in his own defense on only one of two joined offenses which were clearly distinct in time, place, and evidence. *Cross* does not hold that severance is mandatory in any case where the defendant indicates he wishes to testify on some charges and to remain silent on others. Severance for this reason, as for any other, remains in the sound discretion of the trial court and no abuse of discretion may be found to exist unless the defendant can convincingly demonstrate that a genuine prejudice to his trial strategy outweighed considerations of judicial economy in proceeding with a single trial.

*Id.*

The same goes for the case at bar. Though the conduct underlying the drug charges and the assault charge occurred at different times and in different places, they are still intertwined in the manner the government argues. Mr. Hill's actions attempting to flee law enforcement and injuring SA Szabo would be admissible to show consciousness of guilt as to the drug charges; likewise, evidence of the drug

15

activity—and the strength of the government's case—would likely be admissible to show his motive for attempting to avoid apprehension and his knowledge that someone seeking his arrest was a member of law enforcement. As a result of this overlapping evidence, Mr. Hill cannot meet his burden to show that the charges are "distinct in time, place and *evidence*." *United States v. Smirnoff*, 382 F. Supp. 3d 1278, 1281-87 (M.D. Ala. 2019) (emphasis supplied) (denying motion for severance where evidence regarding two offenses would be mutually admissible at trial, and, thus, the defendant would find himself in the same quandary of electing whether to testify if the counts were tried separately).[6] In addition, severance would not protect Mr. Hill's "important" testimony about the assault count or his "strong need" not to testify as to the drug charges, because even in separate trials, Mr. Hill would face the same quandary regarding testifying. *Id.* at 1287; *see also United States v. Scott*, 659 F.2d 585, 589 (5th Cir. Unit B 1981) (finding no

---

[6] To the extent that the government contends that *Smirnoff* held that that mutual admissibility of evidence automatically precludes severance, the Court does not read the case so broadly. Though the *Smirnoff* court seemed receptive to such a rule, it explicitly refrained from so holding and instead went on to consider (1) whether the charges were clearly distinct in time, place and evidence, (2) whether the defendant established that his proffered testimony as to one count was "important," and (3) whether the defendant had shown a "strong need" not to testify as to the other count. *Smirnoff*, 382 F. Supp. 3d at 1286-87.

16

substantial prejudice resulted from joinder of submitting fraudulent tax return charges with witness intimidation charge where evidence relevant to tax charges would have been admissible even if witness intimidation count had been tried separately); *accord United States v. Seigler*, No. 1:16CR00041-005, 2018 WL 3811550, at *2 (W.D. Va. Aug. 10, 2018) ("Since the government would likely introduce evidence of [defendant's] failure to appear at both trials, he would be faced with the same quandary if he wanted to testify[] in defense of his conduct as to only one of the charges.").

*United States v. Oaks*, 285 F. Supp. 3d 876 (D. Md. 2018), a decision Mr. Hill cites for the proposition that his Hobson's choice on testifying warrants severance, is distinguishable. [*See* Doc. 77 at 8-9.] In *Oaks*, a Maryland state senator, Oaks, was charged with accepting bribes from an FBI confidential source posing as a businessperson. 285 F. Supp. 3d at 877. Approximately six months later, the government superseded the indictment to add an additional count of obstruction of justice based on Oaks tipping-off the target of a separate bribery investigation, which was "in no way related to the FBI confidential source posing as a businessman," even though it involved Oaks. *Id.* Oaks moved to sever the obstruction count, and the district court agreed. The court first found that the

17

obstruction charge was not properly joined with the other charges under Rule 8(a) because the two bribery schemes were distinct efforts that lacked a shared objective, and, thus, did not share a common scheme or plan. *Id.* at 878-81. The court then went on to find that even if joinder had been proper, the potential prejudice to Oaks warranted severance. Significantly, the court expressed skepticism that evidence of the charges based on Oaks's dealings with the FBI confidential source would be admissible in a trial on the obstruction charge. *Id.* at 883. The court explained that the government had merely proffered that evidence of supporting the initial bribery charges would provide "factual context" for the obstruction charge; however, providing "factual context," the court noted, is not one of the permissible reasons for admitting prior bad act evidence under Rule 404(b). *Id.*

Mr. Hill's circumstances are different than those in *Oaks*. As discussed above, there is significant evidentiary overlap between the drug charges and the assault charge. At a trial on the assault count only, the government would likely present much of the evidence that it would for the drug count, as the strength of the government's case provides evidence of motive to avoid apprehension and Mr. Hill's mental state. Likewise, at a trial on the drug counts only, evidence of Mr.

18

Hill's arrest would be relevant to show consciousness of guilt. In contrast, Oaks's conduct, tipping off another bribery investigation target, did not pertain directly to the issue of Oaks's own guilt. As a result, the *Oaks* decision does not compel a finding that Mr. Hill would suffer substantial prejudice if the charges are tried together.[7]

For these reasons, it is recommended that the motion to sever due to potential prejudice be denied.

## III.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Mr. Hill's motion to sever [Doc. 77] be **DENIED**. It is also **ORDERED** that Mr. Hill's Motion to

---

[7] Mr. Hill also cites briefly to *United States v. Best*, 235 F. Supp. 2d 923 (N.D. Ind. 2002), a capital murder case in which a district court severed a murder charge from drug and firearm charges based on the defendant's desire to testify with respect to the murder charge so he could provide an alibi defense, but to remain silent as to the remaining charges. The *Best* court reasoned that the possible prejudice to Best if the charges were tried together outweighed the cost of conducting separate trials because (1) the case was a death penalty case and it was important that Best not be deterred from presenting testimony to support his alibi defense, which could result in an acquittal, and (2) the drug distribution conspiracy charge was an actual offense element for the capital murder charge, such that an acquittal on the drug charge would almost certainly foreclose a conviction on the murder charge. *Id.* at 930. Neither of these circumstances is present here.

19

Withdraw Previously Filed Motion (*i.e.*, his motion to compel) [Doc. 95] be **GRANTED**.

I have now addressed all referred pretrial matters relating to this defendant and have not been advised of any impediments to the scheduling of a trial. Accordingly, this case is **CERTIFIED READY FOR TRIAL.**

IT IS SO ORDERED AND RECOMMENDED this 4th day of February, 2021.

_____
JOHN K. LARKINS III
United States Magistrate Judge