IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | |
| | : | |
| CEDRICK HILL, | : | CRIMINAL CASE NO. |
| | : | 1:18-CR-277-AT |
| Defendants. | : | |

**<u>ORDER</u>**

This matter is before the Court on the Magistrate Judge's Report and Recommendation ("R&R") [Doc. 153] recommending that the Defendant's Motion to Suppress Evidence Seized from Warrantless Search and Seizure of Mr. Hill's Vehicle [Doc. 128] be denied.  Mr. Hill filed objections to the Magistrate Judge's R&R [Doc. 155].

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate Judge's R&R for clear error if no objections are filed to the report.  28 U.S.C. § 636(b)(1).  If a party files objections, however, the district court must determine *de novo* any part of the Magistrate Judge's disposition that is the subject of a proper objection.  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b). As Defendant has filed timely objections to the Magistrate's Judge's R&R, the Court reviews that portion of the R&R *de novo*.

Mr. Hill asserts two objections. First, he contends that the Magistrate Judge erred in finding that the traffic stop of Mr. Hill was not conducted in an "extraordinary manner," such that the Court would be required to perform a balancing test to weigh the governmental versus individual interests implicated by the traffic stop to determine if the searches were reasonable under the Fourth Amendment. (Obj., Doc. 155 at 1-4.) In *Whren v. United States*, the Supreme Court held that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis" and that pretextual stops are permissible where the officer had probable cause to believe a traffic violation occurred. 517 U.S. 806, 813-814 (1996) (citing *United States v. Robinson*, 414 U.S. 218, 221 n.1 (1973)). In so holding, the *Whren* Court recognized that every Fourth Amendment case turns upon a "reasonableness" determination and thus "involves a balancing of all relevant factors." *Id.* at 817. That said, "[w]ith rare exceptions . . . , the result of that balancing is not in doubt where the search or seizure is based upon probable cause." *Id.* As a result, where probable cause exists, "the only cases in which we have found it necessary actually to perform the 'balancing' analysis involve searches and seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests" such as: seizure by deadly force; unannounced entry into a home; entry into a home without a warrant; or physical penetration of the body. *Id.* At 818 (internal citations omitted). Under the facts in *Whren*, where the defendants were stopped by an unmarked police

2

car, "[t]he making of a traffic stop out of uniform [did] not qualify as such an extreme practice, and so is governed by the usual rule that probable cause to believe the law has been broken 'outbalances' private interest in avoiding police contact." *Id.*

Here, Mr. Hill argues that the circumstances of his traffic stop were so extraordinary as to require the specific balancing of interests described above. He argues that, in conducting such a balancing test, the Court should find that the stop was an unreasonable Fourth Amendment violation, thereby tainting all evidence obtained from Mr. Hill's person and the search of his vehicle. The stop here was extraordinary, according to Mr. Hill, because it occurred late at night and outside the purview of the public; Mr. Hill was quickly blocked in by multiple officers, rendering the stop overly coercive; and Mr. Hill was immediately subject to questioning about his address. (Obj. at 3-4.) In his post-hearing brief, Mr. Hill cited additional reasons he contends the stop was extraordinary, including that an officer with a canine was present, and that there were four officers in separate cars at the scene. (Post Hearing Br., Doc. 144 at 10.)[1] In measuring the "extraordinary-ness" of the stop, Mr. Hill contends that (1) the specific examples

---

[1] In relying on these facts, the Court understands that Mr. Hill is attempting to analogize to factors courts consider in determining whether an individual has been seized and subject to custodial interrogation. *See Berkemer v. McCarty*, 468 U.S. 420, 438-39 (1984). But Mr. Hill has provided no authority that an assessment of these factors applies to the instant question of whether the stop was so unreasonable that Mr. Hill's privacy interest outbalances the government's interest in ensuring safety and compliance with traffic laws, and the *Whren* Court did not consider them in its analysis of this issue.

listed in *Whren* are not exhaustive and (2) the Court should compare Mr. Hill's stop to other routine traffic stops, not other pretextual traffic stops. (Obj. at 2.)

The facts of the traffic stop at issue here, while somewhat troubling, do not rise to the level of extraordinary as defined by the *Whren* Court, even accepting Mr. Hill's argument that the *Whren* list was not exhaustive. The Court cannot say this stop was "unusually harmful" to Mr. Hill's "individual privacy or [] physical interests" in the manner of those examples articulated in *Whren*, which involve either invasions of the physical body or of the home — a place where an individual's Fourth Amendment protections are at their peak. Here, Mr. Hill was pulled over, blocked in on both sides, required to exit his vehicle, and asked questions about his address, all because he stopped slightly ahead of designated stop lines and because he crossed the double lines when he made a right turn.[2] In other words, he engaged in traffic violations that every driver likely commits at some point. The Supreme Court, in *Whren*, acknowledged this argument that the many applicable traffic and equipment regulations are "so large and difficult to obey perfectly that virtually everyone is guilty of a violation, permitting the police to single out almost whomever they wish for a stop." *Id*. at 818. The Court, however, was not swayed by this reality and found that it did not warrant the balancing analysis Mr. Hill argues for here. Whatever the wisdom of this logic,

---

[2] As the R&R notes, the officers readily admit that the stop was a pretext to figure out Mr. Hill's address because they anticipated arresting him in a few months after a warrant had been issued in connection with a federal investigation of a local Marietta gang. (R&R at 2-3.)

4

the Court is bound to follow *Whren*'s holding. Mr. Hill's stop was not so extraordinary as to require a departure from the "usual rule that probable cause to believe the law has been broken 'outbalances' private interest in avoiding police contact." *Id*. While Mr. Hill's concerns regarding the nature and handling of the traffic stop discussed above are natural, the Court has no authority to deviate from established controlling law. Mr. Hill's first objection is therefore **OVERRULED**.

In his second objection, Mr. Hill contends that the Magistrate Judge erred in finding that the Government met its burden to establish that the seizure of the two flip phones found in Mr. Hill's car was lawful. (Obj., Doc. 155 at 4-5.) At the suppression hearing, Officer Reynolds first testified that he located the flip phones in the car, (Hearing Tr., Doc. 141 p. 13:12-14), but then also testified that he never searched Mr. Hill's car, that only Officer Figueroa did (*id*. p. 22:4-6) and that he (Officer Reynolds) did not remove the flip phones from the car, that it was "more than likely" Officer Figueroa (*id*. p. 26:14-20). Yet, Officer Figueroa testified that he did not find any other items besides the bottles of Promethazine in the vehicle (*id*. p. 70:4-5); and when then asked in follow-up specifically about the flip phones, Officer Figueroa did not recall if he did or did not find the flip phones (*id*. p. 70:10). When asked again moments later on cross-examination whether the "only thing you seize[d] from the vehicle [was] Promethazine, correct?" Officer Figueroa responded "Correct." (*Id*. p. 77:25-78:2.)

5

Mr. Hill highlighted these inconsistencies in his post-hearing brief to argue that, because the Government could not identify who seized the flip phones, where in the car they were found, or at what point in the stop they were discovered, the Government therefore failed to establish that any warrant exception applied. (Post-Hearing Br., Doc. 144 at 12.) In the R&R, the Magistrate Judge acknowledged that the Government had not responded to Mr. Hill's argument on this front but found that, "despite the lack of clarity in the testimony," the most likely explanation was that Officer Figueroa located the flip phones after he had already found the Promethazine and after Mr. Hill had been arrested. (R&R at 17-18.) The Magistrate Judge highlighted that Mr. Hill did not contest that the flip phones were found at some point during the traffic stop. (*Id.* at 18.)

The Government's presentation (or lack thereof) of what specifically occurred with respect to the flip phones was no doubt sloppy.[3] Based on the testimony of Officers Reynolds and Figueroa, it is not at all apparent at what point in the stop the flip phones were found, who found them, and where. Such holes in the story certainly invite suspicion. Nevertheless, the R&R is correct that probable cause existed to stop the car, as a result of the traffic infractions, and that probable cause to search the car existed because Officer Figueroa "smelled

---

[3] Indeed, even after the R&R highlighted the failure of the Government to provide its theory as to what occurred, the Government made no attempt to provide clarification in response to Mr. Hill's objections.

6

an odor of marijuana coming from the vehicle" (Hearing Tr., Doc. 141 p. 11:12-13).[4] The R&R also cites established law recognizing that cell phones are "a known tool of the drug trade." (R&R at 20) (citing *United States v. Lisbon*, 835 F. Supp. 2d 1329, 1363 (N.D. Ga. 2011) *aff'd sub nom. United States v. Moreno*, 559 F. App'x 940 (11th Cir. 2014)).[5] Thus, whether the phones were found in the car before or after the Promethazine, their seizure was based on probable cause. Mr. Hill has not provided argument otherwise. Mr. Hill did, however, contend below that, if the flip phones were seized *from his person before* the Promethazine was found, the requisite probable cause could be lacking. (Post-Hearing Reply, Doc. 151 at 8.) However, there is no shred of record evidence to support that the flip phones were taken from Mr. Hill's person. Rather, all testimony — despite the inconsistencies about who found the flip phones, where, and exactly when — points to the fact that the flip phones were discovered in the car, as outlined in the testimony referenced above. In addition, Mr. Hill has not provided a fully developed and legally supported argument as to why discovery of the flip phones on his person would have violated the Fourth Amendment. Mr. Hill's second objection is therefore **OVERRULED**.

Accordingly, the Court hereby **OVERRULES** Defendant's Objections [Doc. 155] and **ADOPTS** the Magistrate Judge's Report and Recommendation

---

[4] The Court notes that, despite this assertion, there is no indication that any marijuana or marijuana paraphernalia was found in the car.

[5] Officer Reynolds testified at the hearing that the flip phones were "burner phones" and that, based on his experience, burner phones are indicative of drug sales because they are cheap and easy to use. (Hearing Tr., Doc. 141 p. 13:18-25.)

[Doc. 153] as modified by this Order.  Mr. Hill's Motion to Suppress [Doc. 128] is **DENIED**.

The Court hereby sets the trial date for defendant Cedric Hill to begin on Tuesday, August 9, 2022, at 9:30 AM in Courtroom 2306, United States Courthouse, 75 Spring Street, S.W., Atlanta, Georgia.  The pretrial conference is set for August 3, 2022, at 10:30 AM in Courtroom 2308.  By 5:00 PM on July 13, 2022, the parties are to file their respective motions in limine and voir dire questions.  By 5:00 PM on July 13, 2022, the Government is to file a brief statement of facts the parties can rely on for voir dire.  By 5:00 PM on July 20, 2022, the parties are to file any objections to those items listed above.  The time from May 9, 2022, to August 9, 2022, shall be excluded from computation under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv).

The parties should be prepared to provide the Courtroom Deputy Clerk with three (3) copies of your respective exhibit and witness lists at the start of trial for use by the Judge, Court Reporter, and Courtroom Deputy Clerk.  Each party should also provide a courtesy copy of all exhibits for the Judge's use during trial, preferably in an appropriately labeled notebook provided on the first day of trial.  The parties are referred to Local Rule 16.4(B)(19)(b), NDGa, concerning the pre-marking of exhibits.  The parties <u>must</u> provide a courtesy copy of any documents e-filed just prior to trial or on any day during the course of the trial.

Please refer to Judge Totenberg's Guidelines to Parties and Counsel at http://www.gand.uscourts.gov/case-prep-judge-totenberg for information regarding the pretrial conference, voir dire, and courtroom technology. Any training or trial runs regarding the courtroom technology must be scheduled in advance of trial via the Courtroom Deputy Clerk. The Court will not allow time for training or trial runs at the beginning of the trial. Any motions requesting leave to bring technology into the courtroom must be filed no later than three (3) days in advance of trial, to allow time for proper notification to the US Marshals Service.

**IT IS SO ORDERED** this 9th day of May 2022.

_____
**Amy Totenberg**
**United States District Judge**